# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CAROLINE DAMERON, | : | Case No. 3:19-cv-275 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

**I.  Introduction**

Plaintiff Caroline Dameron brings this case challenging the Social Security Administration's most recent denial of her applications for disability benefits. This is her third case before this Court concerning the Administration's denial of her applications.

Previously, in November 2011, Plaintiff filed an application for Supplemental Security Income that was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge Amelia Lombardo concluded Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review, and she filed a case before this Court. This Court granted a Joint Motion to Remand to the Commissioner.

On remand, the claim was assigned to Administrative Law Judge Elizabeth Motta. After a hearing, ALJ Motta concluded Plaintiff was not eligible for benefits because she

was not under a "disability" as defined in the Social Security Act. Plaintiff filed another action before this Court, resulting in an Order vacating the Commissioner's non-disability finding and remanding the case for further administrative proceedings.

Plaintiff's claim then was assigned to Administrative Law Judge Gregory Kenyon. After yet another hearing, ALJ Kenyon determined that Plaintiff was not eligible for benefits as she was not under a "disability" as defined in the Social Security Act. She then filed this action seeking a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), Plaintiff's Reply (Doc. No. 14), and the administrative record (Doc. No. 8).

## II. Background

Plaintiff asserts that she has been under a disability since June 2, 1993. At the time her application was filed, she was forty-six years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Prior to the non-disability decision, her age category changed, and she was then considered a "person closely approaching advanced age." 20 C.F.R. § 416.963(d). Plaintiff has a limited education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 8, Page ID 980-90), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), and Plaintiff's Reply (Doc. No. 14). Rather

than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

### III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" – as defined by the Social Security act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 1382c(a)(3)(A)-(B); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

3

Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

- Step 1: Plaintiff did not engage in substantial gainful employment since the application date, October 5, 2011.

- Step 2: She has the severe impairments of degenerative disc disease of the lumbar spine, compartment syndrome affecting the right lower extremity, hepatitis C, bipolar disorder, personality disorder, anxiety disorder, and a history of polysubstance abuse.

- Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

4

| | |
|---|---|
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following additional limitations: (1) frequent crawling, crouching, kneeling, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) the claimant is limited to performing unskilled, simple, repetitive tasks; (6) occasional superficial contact with co-workers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); (7) no public contact; (8) no teamwork or tandem tasks; (9) no close over the shoulder supervision; (10) no fast paced production work or jobs which involve strict production quotas; (11) the claimant is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next; and (12) no occupational exposure to drugs or alcohol." |
| Step 4: | Plaintiff has no past relevant work. |
| Step 5: | Plaintiff could perform a significant number of jobs that exist in the national economy. |

(Doc. No. 7, PageID 982-89). Based on these findings, the Administrative Law Judge concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 989.

**V.    Discussion**

Plaintiff challenges several aspects of the non-disability decision: (1) the weighing of the medical opinion evidence; (2) allegedly unsupported and unreasonable findings as to the medical evidence, and (3) the vocational expert's testimony. For these reasons, Plaintiff contends that the decision is not supported by substantial evidence.

5

Plaintiff's first asserted errors focus on the weighing of mental health opinions from state agency examining psychologist Mary Ann Jones, Ph.D., and state agency record reviewing psychologists, Bonnie Katz, Ph.D. and Carl Tishler, Ph.D. For the reasons set forth below, error was committed in weighing these medical opinions.

"As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source'), and an opinion from a medical source who regularly treats the claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a 'nontreating source') ...." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted). Thus, '[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.'" *Id.*, (quoting, in part, Social Sec. Ruling No. 96-6p, 1996 SSR LEXIS 3 at *5, 1996 WL 374180 at *2 (eff. July 2, 1996)). In weighing the medical opinions of a non-treating physician or psychologist, the ALJ must consider a number of other factors set forth in the Commissioner's Regulations – specifically, specialization, consistency, supportability, and other factors "which tend to support or contradict the opinion." 20 C.F.R. § 416.927(c)(2)-(6); *see Gayheart*, 710 F.3d at 376.

Dr. Mary Ann Jones performed two consultative psychological evaluations of Plaintiff in November 2011 and February 2012, respectively. (Doc. No. 8-15, PageID 986). Rather than engaging in meaningful review, the ALJ merely found that Dr. Jones' opinion was deserving of only "little weight … because her opinion appears to be based on an

6

uncritical acceptance of the claimant's subjective complaints, without any inquiry into whether they are objectively supported." *Id.* at 988. The only reasoning set forth by the ALJ to justify his decision was his observation that "allegations of agoraphobia are called into question within the record when the claimant reports that she attended a biker event," and that on exam, Plaintiff could "fully express her thoughts, make eye contact, and answer questions." (Doc. No. 8-15, PageID 988). Contrary to these findings, Dr. Jones' report is comprised of clinical observations that show she did not naively accept Plaintiff's subjective complaints, and instead demonstrates that her opinion was objectively supported.

During the first evaluation in November 2011, Plaintiff presented with confused and anxious facial expressions, and was only semi-coherent with "disjointed to retarded" stream of thought. (Doc. No. 8-7, PageID 424). Her demeanor was "defeated, resigned, and dysphoric," and affect "blunted/flat." *Id.* Plaintiff "was fidgety, restless" and she "rocked throughout the interview process." *Id.* She had "limited eye contact." *Id.*

Similarly, in February 2012, Plaintiff's facial expressions were "dull and confused," and her conversation was only semi-coherent. *Id.* at 511. Her stream of thought was "disjointed to retarded" and thought association circumstantial. *Id.* at 512. Plaintiff's demeanor was "defeated, resigned and apathetic," and her affect "sad to emotionally labile." *Id.* She was also restless, rocked back and forth during the interview, and "got up and paced the examiner's office and maintained no eye contact." *Id.*

7

These clinical observations undermine the decision to discredit Dr. Jones' opinion on the basis that she relied on an "uncritical acceptance of [Plaintiff's] subjective complaints." Remarkably, this same exact error was committed on prior remand.

Plaintiff astutely recognizes that this Court previously found Dr. Jones' records cited to objective clinical signs that supported her conclusions which "undermin[ed] the [previous] ALJ's assumption that these opinions were supported only by an uncritical acceptance of Plaintiff's subjective complaints." *See Dameron v. Comm'r of Soc. Sec.*, No. 3:17-CV-114, 2018 WL 2440690, at *4 (S.D. Ohio, April 18, 2018) (Newman, M.J.). Rather than give deference to this prior ruling as to the weighing of Dr. Jones' opinion, ALJ Kenyon ignored this guidance and instead arrived at the same conclusion that was previously rejected. Thus, ALJ Kenyon's conclusion as to Dr. Jones' opinion was contrary to the record and not supported by substantial evidence. *See id.*

In opposition, the Commissioner maintains that Dr. Jones' opinion was properly weighed. (Doc. No. 13, PageID 1700-01). Yet, the Commissioner fails to address how the weighing of Dr. Jones' opinion in the non-disability decision at issue here is any different from that of the decision that was previously before this Court. Instead, the Commissioner relies upon a cursory explanation that "the ALJ considered the objective evidence in the record and reasonably determined that this evidence did not support Dr. Jones' opinion." *Id.* at 1701. For the reasons explained above, this argument is unpersuasive, and the weighing of Dr. Jones' opinion is not supported by substantial evidence.

Error also was committed in weighing Dr. Katz's and Dr. Tishler's opinions. In weighing the opinions of these state agency reviewing psychologists, the ALJ briefly

8

summarizes their opinions and concludes their opinions were due "only partial weight" for "they appear to be somewhat disjointed in that they do not fully offer vocationally relevant limitations which could be used in the claimant's residual functional capacity." (Doc. No. 8-15, PageID 988). The ALJ's weighing of these opinions was devoid of any meaningful review. He declined to address any of the relevant factors set forth in 20 C.F.R. § 416.927(c), and instead found only that the opinions were not expressed in vocationally-relevant terms.

Again, the ALJ committed the same error formerly identified as to the weighing of these opinions. *See Dameron*, 2018 WL 2440690, at *4 ("Simply restating the record reviewing opinions and offering a conclusory assessment, without further discussion, fails to satisfy the requirement that the ALJ provide meaningful explanation of the weight given to all the medical opinion evidence"). The primary difference is that ALJ Kenyon afforded only "partial weight" to these opinions rather than "significant weight" as in the previous decision. This slight distinction does not resolve the ALJ's failure to address the relevant factors, especially since he still afforded more weight to these record-reviewing psychologists than to Dr. Jones, who evaluated Plaintiff on two separate occasions.

Moving on from these medical opinions, Plaintiff also criticizes the categorical rejection of her mental health treatment provider, Epie Ajebe, APRN. Mr. Ajebe, who submitted a mental impairment questionnaire, opined that Plaintiff's mental impairments would cause her to be off task for 20 percent or more of the workday and absent more than three times per month. (Doc. No. 8-15, PageID 988). These findings were rejected by the ALJ because Mr. Ajebe was "not an acceptable medical source" and the conclusions

9

"appear[ed] extreme and [were] unsubstantiated by objective medical findings." *Id.* As a result, his conclusions were afforded "little weight."

The consideration of Mr. Ajebe's conclusions was superficial. The ALJ also declined to offer any citation or comparison to the record in cursorily declaring that Mr. Ajebe's conclusions were "extreme" and "unsubstantiated." While it is true that Mr. Ajebe is not an acceptable medical source, and his conclusions therefore were not entitled to any special weight or consideration, s*ee* 20 C.F.R. §§ 416.913(a), 416.927, the ALJ nevertheless should have demonstrated that he fairly considered the relevant factors in assessing Mr. Ajebe's conclusions and assigning them "little weight." This failure to properly consider Mr. Ajebe's conclusions further supports the finding that the non-disability decision is not supported by substantial evidence.

In the decision, the ALJ expressed that Mr. Ajebe "indicated moderate to marked limitations in all domains of mental functioning." Had he addressed some of the relevant factors, such as consistency and supportability, such factors would have indicated that these conclusions were similar to the other medical opinion evidence. For example, Mr. Ajebe and Dr. Jones both found Plaintiff had moderate to marked impairment in understanding, remembering and applying. (Doc. No. 8-22, PageID 1663) (Doc. No. 8-7, PageID 427). Additionally, Mr. Ajebe found Plaintiff to be moderately to markedly impaired in her ability to maintain concentration, persistence and pace, and Dr. Jones found Plaintiff to be moderately impaired in this area. *Id.* Similarly, Drs. Katz and Tishler determined Plaintiff was moderately impaired in this regard. (Doc. No. 8-3, PageID 129, 143).

Other aspects of the non-disability decision are unsupported by substantial evidence. For instance, there is emphasis on the fact that Plaintiff attended a biker event even though "she alleges serious agoraphobia causing her to rarely leave her house." (Doc. No. 8-15, PageID 987). The ALJ also refers to this event when discrediting Dr. Jones' medical opinion. *Id.* at 988. However, attendance at a single event when Plaintiff indicated she had to leave early due to all of the people does not reasonably serve to entirely undermine the seriousness of her mental impairments.

In addition, the ALJ references the observations of the Cleveland Cooperative Disability Investigation Unit for the purpose of discrediting her allegations. Although there was no observed psychosis during her interview with that unit, the vast remainder of the medical evidence from state agency reviewing and consultative psychologists as well as Plaintiff's mental health provider supports the seriousness of Plaintiff's mental impairments. As Plaintiff reasonably recognizes, the detectives' observations that she "exhibited no signs of having any physical or mental impairments" is inconsistent with the medical evidence and the ALJ's own findings.

Plaintiff's final argument relates to the vocational expert's testimony. Plaintiff contends that the determination at Step Five is not supported by substantial evidence given that Plaintiff's limitation of no close over-the-shoulder supervision would prevent her from being able to complete the requisite training period. This argument is unpersuasive as substantial evidence supports the ALJ's reliance on the vocational expert's testimony. For instance, Plaintiff's counsel and the vocational expert engaged in the following exchange:

11

> Q: During that training period, would it be safe to assume that there would be at least some degree of close, over the shoulder supervision, and or teamwork or tandem tasks with another employee while the hypothetical worker learned to do tasks associated with the job?
>
> A: There will be training, yes. If you – I'm not sure that meets the over the shoulder, close supervision. I think of that as once you're on the job and you have a supervisor who stands and watches the line. But yes, I do agree that all jobs have a training, and some type of training that they will go through.

(Doc. No. 8-15, PageID 1098). This exchange suggests the vocational expert understood the no over-the-shoulder supervision limitation to apply in the performance of the job, but not necessarily during the training period. Plaintiff's counsel asked several follow-up questions after this exchange, but the later testimony does not so clearly relate to the no over-the-shoulder supervision limitation as to render the ALJ's reliance on the vocational expert's testimony unsupported by substantial evidence.

Nevertheless, a remand for benefits is warranted as the ALJ's decision is rife with the same errors that infected a different ALJ's earlier decision in this case. The ALJ failed to correct those errors on remand. And "[t]o the extent the ALJ failed to comply with the Court's instruction on remand, it was further error because Social Security ALJs are not free to ignore Judicial Orders ..." *Miller v. Colvin*, No. 3:15-CV-153, 2016 WL 6584509, at *2 (S.D. Ohio, April 5, 2016) (Ovington, M.J.). As the Sixth Circuit has previously recognized:

> In some Social Security cases, district courts will include detailed instructions concerning the scope of remand and the issues to be addressed. In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 866 ... (1989). *See also Mefford v. Gardner*, 383 F.3d 748, 758 (6th Cir. 1967) (noting "the general rule that, on the remand of a case after appeal, it is the duty of the lower court,

12

or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions."). These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion ....

*Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002).

Additionally, Plaintiff has prosecuted her case through administrative and judicial proceedings for nearly ten years. Because there is strong evidence of disability while contrary evidence is lacking, there is no just reason to further delay this matter ad infinitum for even more administrative procedures. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (remanding for benefits after 2 remands and 3 administrative hearings and finding, "[i]n light of the extensive opinions of treating physicians as to the severity of [the plaintiff]'s psoriasis and psoriatic arthritis, . . . that substantial evidence on the record as a whole supports a finding of total disability.").

## IT IS THEREFORE ORDERED THAT:

1. The ALJ's non-disability decision is vacated;

2. Plaintiff Caroline Dameron's applications for benefits are granted and benefits shall be afforded to Dameron on remand; and

2. The case is terminated on the Court's docket.

March 9, 2021                                               *s/ Sharon L. Ovington*
                                                            Sharon L. Ovington
                                                            United States Magistrate Judge

13